IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 13-cv-02130-BNB

MICHELLE L. STEINER,

Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

Defendant.
_____

**ORDER**
_____

This action seeks review of the Commissioner's decision denying plaintiff's claim for Disability Insurance Benefits under Title II, sections 216(i) and 223(d) of the Social Security Act, 42 U.S.C. §§ 416(i) and 223(d), and Supplemental Security Income Benefits under Title XVI, section 1614(a)(3)(A), 42 U.S.C. § 1382c(a)(3)(A). The court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g) and 42 U.S.C. 1383(c)(3). The matter has been fully briefed, obviating the need for oral argument. The decision is REVERSED and the case is REMANDED to the Commissioner.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

The plaintiff filed for benefits in October 2009, stating that she had become disabled beginning December 22, 2006. *Social Security Administrative Record* [Doc. #11] (the "Record"), p. 13.[1] Her applications were denied on March 19, 2010. Id. at pp. 58-59. The

---

[1] I refer to the official page numbers of the Record which are found on the lower right-hand corner of each page, not to the page numbers that are assigned by the court's docketing system. In addition, all references to the Code of Federal Regulations are to the 2013 edition of

plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Id. at pp. 89-90. The hearing was held on September 7, 2011. Id. at pp. 29-57. On October 24, 2011, the ALJ issued a written decision finding the plaintiff disabled as of May 28, 2011. The plaintiff requested a review of the ALJ's decision by the Appeals Council. Id. at pp. 6-8. The Appeals Council denied the plaintiff's request for review. Id. at pp. 1-5. Therefore, the ALJ's decision is the final decision of the Commissioner of Social Security. Id. at p. 1.

## II.  STANDARD OF REVIEW

Review of the Commissioner's disability decision is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence. Hamilton v. Secretary of Health and Human Services, 961 F.2d 1495, 1497-98 (10th Cir. 1992); Brown v. Sullivan, 912 F.2d 1194, 1196 (10th Cir. 1990). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. Brown, 912 F.2d at 1196. It requires more than a scintilla but less than a preponderance of the evidence. Hedstrom v. Sullivan, 783 F. Supp. 553, 556 (D. Colo. 1992). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). Although a reviewing court should meticulously examine the record, it may not reweigh the evidence or substitute its discretion for that of the Commissioner. Id.

---

part 404, which addresses claims under Title II of the Act. All cited regulations have parallel citations in part 416, which address claims under Title XVI of the Act.

## III.  THE LAW

A person is disabled within the meaning of the Social Security Act only if her physical and mental impairments preclude her from performing both her previous work and any other "substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2). "When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination." Campbell v. Bowen, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)).  However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act.  To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. See Kelley v. Chater, 62 F.3d 335, 338 (10th Cir. 1995).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled:

1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity.  A claimant who is working is not disabled regardless of the medical findings.

2. The ALJ  must then determine whether the claimed impairment is "severe."  A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.

    3. The ALJ must then determine if the impairment meets or medically equals in severity certain impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.

    4. If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant has the residual functional capacity ("RFC") to perform his past work despite any limitations.

    5. If the claimant does not have the RFC to perform his past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and RFC.

20 C.F.R. §§ 404.1520(a)-(f). See also Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir. 1988).

    The claimant has the initial burden of establishing a disability in the first four steps of this analysis. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). The burden then shifts to the Commissioner to show that the claimant is capable of performing work in the national economy. Id. A finding that the claimant is disabled or not at any point in the five-step review is conclusive and terminates the analysis. Casias v. Secretary of Health & Human Services, 933 F.2d 799, 801 (10th Cir. 1991).

## IV.  ANALYSIS

    The ALJ found that (1) the plaintiff last met the insured status requirements of the Social Security Act for the purpose of establishing entitlement to disability insurance benefits on

December 31, 2007;[2] (2) the plaintiff meets the insured status requirements of the Social Security Act for the purpose of establishing entitlement to Medicare as a qualified government employee through at least December 31, 2011;[3] (3) the plaintiff has not engaged in substantial gainful activity since December 22, 2006 (the alleged onset date of disability); (4) since December 22, 2006, the plaintiff has had the following severe impairments: disorders of the digestive system, a disorder of the back, multiple unspecified arthralgias, and a combination of depression and anxiety; (5) since December 22, 2006, the plaintiff has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926); (6) prior to May 28, 2011 (the date the ALJ determined that the plaintiff became disabled), the plaintiff had the RFC to perform unskilled work with a specific vocational preparation ("SVP") level of one or two, with minimal direct public contact, lifting and/or carrying 10 pounds frequently and 20 pounds occasionally up to 1/3 of an eight hour work day, standing and/or walking for a total of six hours in an eight hour work day with normal breaks, sitting for a total of six hours in an eight hour work day with normal breaks, performing pushing and pulling motions with upper and lower extremities within the aforementioned weight restrictions, occasional stooping or kneeling, and occasional climbing of

---

[2] Therefore, she had to establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits.

[3] The plaintiff's application for disability insurance benefits is an application for all insurance benefits for which she is eligible under Title II and Part A of Title XVIII. *Record*, p. 13.

ropes, ladders, or scaffolds; (7) since May 28, 2011, the plaintiff has been unable to sustain concentration, persistence, and pace necessary to consistently fulfill work for eight hours per day, five days per week, in order to complete a 40 hour work week; (8) since December 22, 2006, the plaintiff has been unable to perform any past relevant work; (9) prior to May 28, 2011, jobs existed in significant numbers in the national economy that the plaintiff could have performed; (10) beginning May 28, 2011, there are no jobs that exist in significant numbers in the national economy that the plaintiff can perform; and (11) the plaintiff was not disabled prior to May 28, 2011, but became disabled on that date and has continued to be disabled through the date of the ALJ's decision. *Record*, pp. 13-28.

The plaintiff argues that: (1) the ALJ's finding of the onset date of the disability is not supported by any evidence in the record; (2) the RFC finding for the time period before May 28, 2011, is not supported by any evidence; (3) the ALJ improperly rejected the plaintiff's testimony and all medical opinions for the time period prior to May 28, 2011; and (4) the ALJ did not properly assess the evidence concerning the disability onset date under Social Security Ruling ("SSR") 83-20. *Plaintiff's Opening Brief* [Doc.#14], pp. 14-33.

## The RFC Finding

The plaintiff argues that the ALJ's RFC finding is not supported by any evidence in the record. *Plaintiff's Opening Brief*, pp. 18-22. Specifically, the plaintiff argues that the ALJ rejected every medical opinion and the plaintiff's testimony as they relate to the time period before May 28, 2011, and substituted her own judgment. The plaintiff also argues that "it

certainly appears that the ALJ might have actually adopted the SDM's[4] physical restrictions."
Id.

RFC is an assessment of the claimant's ability "to do sustained work-related physical and mental activities in a work setting" for eight hours a day, five days a week, or the equivalent thereof. Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 at *2. "The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments, including the impact of any related symptoms." Id. at *1. A claimant's RFC is at issue only at steps four and five of the sequential evaluation process. Id. at *3.

The RFC must address the individual's exertional capacity (limitations and restrictions of physical strength) and nonexertional capacity (limitations and restrictions that do not depend on physical strength). Id. at *5. The exertional functions that must be addressed are sitting, standing, walking, lifting, carrying, pushing, and pulling. Id. Each function must be considered separately. Id. It is necessary to assess the claimant's capacity to perform each of these functions in order to decide which exertional level is appropriate (sedentary, light, medium, heavy, or very heavy) and whether the individual is capable of doing the full range of work contemplated by the exertional level. Id. at *3. Therefore, an RFC assessment must identify the functional limitations and restrictions and assess the work-related abilities on a function-by-function basis before the RFC is expressed in terms of exertional levels of work. Id.

---

[4]An SDM is a "single decision maker." An SDM is not a medical professional, and the ALJ may not accord the opinion of an SDM any weight. Lopez v. Astrue, 805 F.Supp.2d 1081, 1092 (D.Colo. 2011).

When assessing an RFC for an individual with mental impairments, the ALJ should consider the individual's ability to "understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting. Id. at *6. An RFC assessment of mental limitations and restrictions "must be expressed in terms of work-related functions." Id.

> Importantly:
>
>> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

Id. at *7.

Here, the ALJ did not provide any discussion regarding the plaintiff's ability to sit; lift and/or carry weight; stand and/or walk; perform pushing and pulling motions; stoop; kneel; climb; understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting. Instead, the ALJ summarily found that prior to May 28, 2011 (the date the ALJ found that the plaintiff became disabled), the plaintiff had the RFC to perform unskilled work with a specific vocational preparation ("SVP") level of one or two, with minimal direct public contact; lifting and/or carrying 10 pounds frequently and 20 pounds occasionally up

8

to 1/3 of an eight hour workday; standing and/or walking for a total of six hours in an eight hour workday with normal breaks; sitting for a total of six hours in an eight hour workday with normal breaks; performing pushing and pulling motions with upper and lower extremities within the aforementioned weight restrictions; occasional stooping or kneeling; and occasional climbing of ropes, ladders, or scaffolds. *Record*, p. 17.

The record contains several opinions regarding the plaintiff's exertional and nonexertional capacities. On March 19, 2010, an SDM completed forms which include assessments of the plaintiff's RFC. Id. at pp. 66-67, 76-77. The SDM found that the plaintiff was capable of lifting and/or carrying 10 pounds frequently (cumulatively more than 1/3 up to 2/3 of an eight hour workday) and 20 pounds occasionally (cumulatively 1/3 or less of an eight hour workday); standing and/or walking for a total of more than six hours on a sustained basis in an eight hour workday with normal breaks; sitting for more than six hours on a sustained basis in an eight hour workday; pushing and/or pulling for an unlimited period other than shown for the lifting and/or carrying restrictions; occasional stooping or kneeling; and occasional climbing of ropes, ladders, or scaffolds. Id.

Dr. Tyler saw the plaintiff several times from January 2011 through April 2011. On July 5, 2011, he completed a form in which he opined that due to the combination of bipolar disorder, irritable bowel syndrome, fibromyalgia, and polyarthropathy, the plaintiff is capable of lifting no more than 15 pounds up to 1/3 of an eight hour workday; sitting one hour at a time up to four hours during an eight hour workday; standing/walking 15 minutes at a time up to one and one-half hours during an eight hour workday; never crawling; rarely stooping or squatting; and seldom kneeling. Dr. Tyler stated that the plaintiff could be expected to miss work

approximately 20 days per month, and that she had these limitations since July 2007. *Record*, pp. 595-96.

Additionally, the ALJ stated that on May 28, 2011, the plaintiff began regular weekly counseling with Kathy J. Kunce, L.C.S.W., for major depression. Id. at p. 25. In July 2011, Ms. Kunce opined that since 2003, the plaintiff has had marked or extreme limitations of virtually all mental abilities required to sustain work, including the ability to understand, carry out, and remember instructions; make simple work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting. Id. at pp. 588-90.

The ALJ also reviewed records from Dr. Nizami, who treated the plaintiff for depression from 2005 through 2010. On August 24, 2011, Dr. Nizami completed a form which indicates that the plaintiff has marked or extreme limitations on every ability required to meet the mental demands of work and that the limitations have existed at this level since 2000. Id. at pp. 26, 627-29.

The ALJ stated that she gave no weight to the opinion of the SDM. Further, she rejected the opinions of Dr. Tyler, Ms. Kunce, and Dr. Nizami insofar as they pertained to the period prior to May 28, 2011, on the basis that they are inconsistent with the medical evidence. Id. at pp. 25-26. However, the ALJ did not provide any discussion regarding how she arrived at the plaintiff's RFC determination. She failed to separately consider each work-related function; provide a narrative discussion describing how the evidence supports her findings as to each function; and explain how material inconsistencies or ambiguities in the evidence were considered and resolved with respect to her RFC findings. Therefore, the RFC finding fails to

comply with SSR 96-8p. Social Security rulings are binding on an ALJ. <u>Nielson v. Sullivan</u>, 992 F.2d 1118, 1120, 1121–22 (10th Cir. 1993).

IT IS ORDERED that the decision of the Commissioner is REVERSED, and the matter is REMANDED for further proceedings consistent with Social Security Ruling 96-8p.[5]

Dated August 6, 2014.

BY THE COURT:

s/ Boyd N. Boland
United States Magistrate Judge

---

[5]In addition, because compliance with Social Security Ruling 96-8p could alter the ALJ's decision, I do not address the plaintiff's remaining arguments.